Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2626 | **DATE** | 5/28/2004 |
| **CASE TITLE** | Thele vs. Sunrise Chevrolet, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants Sunrise Chevrolet's motion for summary judgment in its entirety (17-1). Judgment is entered in favor of defendant on all counts.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUN 07 2004 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 23 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | |
| OR | courtroom deputy's initials | 2004 JUN -4 PM 2:56 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LISA THELE,                           )
                                      )
        Plaintiff,                    )
                                      )
    v.                                )   Case No. 03 C 2626
                                      )
SUNRISE CHEVROLET, INC.,              )
                                      )
        Defendant.                    )

DOCKETED
JUN 0 7 2004

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Lisa Thele sues Sunrise Chevrolet, Inc. claiming common law fraud and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 and 2C; the Illinois Credit Services Organization Act, 815 ILCS 605/5; the Equal Credit Opportunity Act, 15 U.S.C. § 1691; and the Fair Credit Reporting Act, 15 U.S.C. § 1681m(a). Thele's complaint arises from her unsuccessful attempt to purchase a 2003 Monte Carlo automobile. Sunrise Chevrolet moves for summary judgment on all of Thele's claims. For the reasons stated below, the Court grants Defendant's motion.

### Statement of Facts

The following facts are not in dispute. In June 2000, Thele leased a 2000 GMC Envoy through the Smart Buy leasing program from a car dealer other than Sunrise Chevrolet. Def.'s Facts ¶ 1; Pl.'s Resp. to Def.'s Facts ¶ 1. She entered into a retail installment contract with GMAC requiring her to make payments of $556.38 on the first of each month for 35 months.

1

Def.'s Facts ¶ 2; Pl.'s Resp. to Def.'s Facts ¶ 2. In January 2003, GMAC and General Motors implemented the Spring Pull Ahead Program, allowing Smart Buy lessees to end their leases early without penalty if they purchased a new GM vehicle. Def.'s Facts ¶ 4; Pl.'s Resp. to Def.'s Facts ¶ 4. However, to be eligible, participants in the Spring Pull Ahead Program had to pay any outstanding balances on their leases. *Id.*

Thele brought her Envoy to Sunrise Chevrolet on February 2, 2003, and attempted to purchase a 2003 Monte Carlo under the Spring Pull Ahead Program. Def.'s Facts ¶ 5; Pl.'s Resp. to Def.'s Facts ¶ 5. At the time, Thele was one month behind on her lease payments for the Envoy. Def.'s Facts ¶ 3; Pl.'s Facts ¶ 5. She understood that she had to pay the missed installment. Pl.'s Facts ¶ 7; Def.'s Resp. to Pl.'s Facts ¶ 7.

Sunrise Chevrolet told Thele she needed to provide a letter verifying her employment, which she tendered the following day. Def.'s Facts ¶ 6; Pl.'s Resp. to Def.'s Facts ¶ 6. She then signed a retail installment contract, a finance rider and an extended service warranty contract for the Monte Carlo. Def.'s Facts ¶ 7; Pl.'s Resp. to Def.'s Facts ¶ 7. The finance rider stated:

> The customer understands and agrees that Sunrise Chevrolet shall not be obligated to sell unless a third party agrees to purchase the motor vehicle retail installment contract by the customer with the purchase contract and this rider. Customer agrees to reasonably cooperate in obtaining such third party approval including but not limited to the providing of support documentation for statements on the credit application. The purchase contract and retail installment contract may be cancelled at anytime by Sunrise Chevrolet, if Sunrise Chevrolet determines, in its sole discretion, that it can not obtain third party approval and may be cancelled by either party within 10 days if third party approval is not obtained on the agreed terms.

Def.'s Ex. D. Thele testified at her deposition that she signed the rider without reading it. Def.'s Facts ¶ 8; Pl.'s Resp. to Def.'s Facts ¶ 8. The extended service warranty contract that she signed

2

stated: "I acknowledge that purchase of this agreement is not required in order to purchase or obtain financing for a motor vehicle." Def.'s Ex. F; Def's Facts ¶ 9; Pl.'s Resp. to Def.'s Facts ¶ 9. Plaintiff made a $500 down payment and took possession of the Monte Carlo. Def.'s Facts ¶ 10; Pl.'s Resp. to Def.'s Facts ¶ 10. Thele left her Envoy with Sunrise Chevrolet. Def.'s Facts ¶ 11; Pl.'s Facts ¶ 8. GMAC later picked up the Envoy from the dealership. Def.'s Facts ¶ 12; Pl.'s Resp. to Def.'s Facts ¶ 12.

From this point, Thele and Sunrise Chevrolet's accounts diverge. Thele states that a salesperson for Sunrise Chevrolet told her that if she purchased the extended warranty for the Monte Carlo, "they could get [her] at a lower rate and that the bank would probably most likely approve [her loan]." Pl.'s Dep. at 48. Sunrise Chevrolet states that it submitted Thele's credit application to Auto One Acceptance Corp., Nuvell Credit Corp., Triad Financial Corp., and Bank One, N.A., but all four lenders declined to extend Thele credit and sent her notice of their decisions. Def.'s Facts ¶ 13. In support of its claim, Sunrise Chevrolet has provided the letter or a sample of the type of letter that each lender sent to Thele denying her credit, see Def.'s Ex. G-J, and affidavits from employees of Nuvell, Triad and Bank One stating that the letters were sent out in accordance with their regular business procedures. See Def.'s Ex. G-I. The letters from Auto One, Nuvell and Triad are addressed to Thele and refer to her application for credit for the purchase of a vehicle from Sunrise Chevrolet. See Def.'s Ex. G-H, J. The letters all explain that the lender is denying Thele credit based in part on a credit report from Trans Union Corp., that Thele can request a free copy of her credit report from Trans Union, that in compliance with the Federal Equal Credit Opportunity Act, the lender does not discriminate against credit applicants on prohibited grounds. Each of the letters provides the specific reasons why her application was

3

denied or explains how she can request such a statement of reasons. *See* Def.'s Ex. G-J.

The parties agree that Sunrise Chevrolet called Thele and told her that she had to return the Monte Carlo to the dealership because financing had not been approved. Def.'s Facts. ¶ 15; Pl.'s Resp. to Def.'s Facts ¶ 15. Thele returned the Monte Carlo to the dealership before she had made any payments on the car, and Sunrise Chevrolet returned Thele's $500 down payment. *Id.* The parties agree that GMAC sent Thele a letter on March 24, 2003, stating that her Envoy would be sold if she did not pay the past-due installment on her lease of the Envoy. Def.'s Facts ¶ 16; Pl.'s Resp. to Def.'s Facts ¶ 16. Thele never contacted GMAC. *Id.* Defendant alleges that GMAC sent her another letter on April 15, 2003, informing her that the Envoy would be sold after May 6, 2003 if she did not pay the past-due installment. Def.'s Facts. ¶ 17. Thele confirmed at her deposition that she received the April 15 letter but did not contact GMAC. Pl.'s Dep. at 76-77.

Thele testified at her deposition that the week after she returned the Monte Carlo, she purchased a 1995 Cadillac from a friend for $8,500. *Id.* at 15-16. She paid $2,500 out of pocket and received a loan for the other $6,000 from American General. *Id.* at 16.

**Analysis**

Sunrise Chevrolet moves for summary judgment on all six claims in Thele's complaint. Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court evaluates admissible evidence in the record "as a jury might, construing the record in the light most favorable to the nonmovant and avoiding the temptation to

4

decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (citation omitted).

Thele repeatedly cites to her complaint as support for her claim that a genuine issue of fact exists. But "[t]he nonmovant will successfully oppose summary judgment only when it presents 'definite, competent evidence to rebut the motion.'" *Vukadinovich v. Board of School Trustees of North Newton School Corp.*, 278 F.3d 693, 699 (7th Cir. 2002) (citation omitted). The nonmovant "must produce more than a scintilla of evidence to support [her] position." *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001) (citation omitted). "The mere denial of a particular fact without specific references to affidavits, parts of the record, and other supporting materials is insufficient, and, where a properly supported factual assertion is met with such a naked denial, the fact may be deemed admitted." *Fuller v. Caterpillar Inc.*, 124 F. Supp. 2d 610, 614 (N.D. Ill. 2000) (citations omitted).

## 1. *Counts 1 & 2 – fraud*

In Counts 1 and 2, Thele alleges that Sunrise Chevrolet committed common law fraud and violated the Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2, by misrepresenting that if she purchased the $1,995 extended service warranty contract, she would be approved for financing with a 9.9 percent annual percentage rate ("APR"). Compl. ¶¶ 7-9. Thele states that if she had known that she would not receive approval for the 9.9 percent APR, she would not have purchased the extended warranty or the Monte Carlo. Compl. ¶ 11. To prevail on a claim of common law fraud in the formation of a contract, Thele must show that "(1) [Sunrise Chevrolet] made a false statement of material fact, (2) [Sunrise Chevrolet] knew that the statement was false, (3) [Sunrise Chevrolet] made the statement intending to induce [Thele] to

5

act, (4) [Thele] relied upon the truth of the statement, and (5) [Thele's] damages resulted from reliance on the statement." *Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 574 (7th Cir. 2001) (citing *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496, 675 N.E. 2d 584, 591 (1996)). To prevail on her ICFA claim, Thele must show: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149, 776 N.E.2d 151, 160 (2002) (citing *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 373, 695 N.E.2d 853, 860-61 (1998), and *Connick*, 174 Ill. 2d at 501, 675 N.E.2d at 593 ). *See also Cozzi*, 250 F.3d at 576 (also citing *Connick*). Sunrise Chevrolet argues it is entitled to summary judgment on both claims because Thele cannot show either actual damage or a fraudulent misrepresentation. Because we find Thele cannot demonstrate the former, the Court need not address whether she can demonstrate the latter.

Sunrise Chevrolet argues that even if one of its agents made the alleged misrepresentation, it is entitled to judgment because Thele suffered no damages when she was denied financing because her down payment was returned and she made no payments on the retail installment contract for the Monte Carlo. Sunrise Chevrolet points out that Thele cannot blame Defendant for the loss of her Envoy because GMAC would have returned it to her if she had made the past-due payment that she owed, *see* Def. Ex. L & M, and that she admits she was obligated to pay even if she purchased the Monte Carlo and turned in the Envoy under the Spring Pull Ahead Program. *See* Pl.'s Facts ¶ 7. Sunrise Chevrolet also argues that Thele has not substantiated her claims of aggravation and inconvenience attributable to Defendant or, for that

6

matter, her frustration at not getting the Envoy back, which was because she failed to make a past-due payment to GMAC.

Thele responds by referring back to the damages alleged in her complaint. This is insufficient to forestall summary judgment. When faced with a motion for summary judgment, "[the] party who bears the burden of proof on a particular issue . . . may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Fogle v. William Chevrolet/GEO, Inc.*, 99 C 5960, 2000 WL 1129983, at *2 (N.D. Ill. Aug. 9, 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Thele has failed to come forth with any evidence that she suffered tangible or intangible damages from the alleged misrepresentation. Allegations set forth in her complaint do not constitute evidence sufficient to create a genuine issue of material fact for trial. *See, e.g., Fogle*, 2000 WL 1129983, at *6 (dismissing ICFA and common law fraud claims because "plaintiffs have not presented a shred of evidence to establish a genuine issue of material fact on damages such that a trial is required"). Accordingly, Sunrise Chevrolet is entitled to summary judgment on Counts 1 and 2.

## 2. *Count 3 – failure to return the down payment when financing was denied*

In Count 3, Thele alleges that after her application for financing was denied, Sunrise Chevrolet failed to return her down payment in violation of Section 2C of the ICFA, 815 ILCS 505/2C. Section 2C states:

> If the furnishing of merchandise, whether under purchase order or a contract of sale, is conditioned on the consumer's provided credit references or having a credit rating acceptable to the seller and the seller rejects the credit application of that consumer, the seller must return to the consumer any down payment, whether such down payment is in the form of money, goods, chattels or otherwise, made

7

under that purchase order or contract and may not retain any part thereof.

815 ILCS 505/2C. Thele admits that after she returned the Monte Carlo to Sunrise Chevrolet, the dealership returned her $500 down payment. Pl.'s Resp. to Def.'s Facts ¶ 15. But she insists Sunrise Chevrolet violated 815 ILCS 505/2C by failing to give her back her Envoy after her application for financing was denied. She argues that the Envoy constituted part of the down-payment even though it was not a trade-in because it "was part of the consideration of the entire bargain between Defen[d]ant, its agents and the Plaintiff." Pl.'s Resp. at 9.

Sunrise Chevrolet argues that it is entitled to judgment on Count 3 because Thele did not turn over the Envoy as part of her down payment for the Monte Carlo. The Court agrees. Thele admitted that the Envoy's value did not decrease the cost of the Monte Carlo to her. Thele Dep. at 33; *see also* Def.'s Ex. E (Retail Installment Contract denoting "N/A" as value of trade-in). Thele did not return the Envoy as consideration for the Monte Carlo; rather, as she admitted in her deposition, she returned the Envoy in consideration for forgiveness – which she received – of the final five or six months of payments left on her Envoy (but not the past-due payment she owed at the time she brought in the Envoy). Thele Dep. at 33-34. Accordingly, the Court grants Sunrise Chevrolet judgment on Count 3.

### 3.  *Count 4 – misrepresentation by a credit services organization*

In Count 4, Thele alleges Sunrise Chevrolet violated the Illinois Credit Services Organization Act ("CSOA"), 815 ILCS 605 *et seq.*, by misleading her to believe she would receive a lower rate of interest if she bought an extended warranty. The Act prohibits a credit services organization from, among other things,

[m]ak[ing] or us[ing] any untrue or misleading representations in the offer or sale

8

of the services of a credit services organization or engage, directly or indirectly, in any act, practice or course of business intended to defraud or deceive a buyer in connection with the office or sale of such services; including but not limited to: the amount or type of credit a consumer can expect to receive as a result of the performance of the services offered; the qualifications, training or experience of its personnel; or the amount of credit improvement the consumer can expect to receive as a result of the services.

815 ILCS 605/5(4). Sunrise Chevrolet argues Thele's claim must fail because an auto dealership is not a credit services organization and, therefore, the Act does not govern its conduct.

The Act defines a credit services organization as

a person who, with respect to the extension of credit by others and in return for the payment of money or other valuable consideration, provides, or represents that the person can or will provide, any of the following services:
   (i) improving a buyer's credit record, history, or rating;
   (ii) obtaining an extension of credit for a buyer; or
   (iii) providing advice or assistance to a buyer with regard to either subsection (i) or (ii).

815 ILCS 605/3(d). In *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 316, 789 N.E.2d 1248, 1250 (2003), the Illinois Supreme Court held that a home remodeling business that forwarded its customer's credit application was not governed by the CSOA. The court found it "clear that the Credit Services Act regulates transactions involving the payment of money or other valuable consideration *in return* for the services of the credit services organization." *Id.* at 321, 789 N.E.2d at 1253 (emphasis in original). The court concluded that:

[t]he Credit Services Act is not intended to regulate retailers primarily engaged in the business of selling goods and services to their customers. The goods and services provided by retailers are not generally services aimed at improving the consumer's credit or obtaining an extension of credit for the consumer, otherwise unattainable because of the consumer's poor credit history or rating.

*Id.* at 324, 789 N.E.2d at 1254-55 (citing *Fogle*, 2000 WL 1129983).

Applying this holding, an Illinois Appellate Court recently held that the CSOA did not

apply to a car dealership even though it assisted the plaintiff in receiving financing to purchase an automobile. *Cannon v. William Chevrolet/GEO, Inc.*, 341 Ill. App. 3d 674, 684, 794 N.E.2d 843, 851 (2003). The court reasoned that the CSOA did not apply to the dealer even though "it [wa]s undisputed that William Chevrolet assisted [the plaintiff] in obtaining financing for her automobile purchase, and indeed obtained a loan commitment from the bank," because the plaintiff had presented no evidence that "she paid a fee or gave other valuable consideration relating solely to efforts made in obtaining the extension of credit." *Id.*

Sunrise Chevrolet is not a credit services organization. It is primarily in the business of selling automobiles, not the business of improving customers' credit or obtaining credit for them. Passing its customers' credit applications to potential lenders is incidental to Sunrise's business of selling automobiles. Thele did not pay Sunrise Chevrolet to forward her credit application to potential lenders; she gave Sunrise consideration only for the car and an extended warranty. Therefore, the CSOA does not apply to Sunrise Chevrolet's conduct. The Court grants Defendant's motion for summary judgment on Count 4.

### 4. *Count 5 – failure to comply with the Equal Credit Opportunity Act*

In Count 5, Thele claims Sunrise Chevrolet violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691, by failing to send her written notice that she was denied credit and explaining why. The Equal Credit Opportunity Act requires that:

> (1) Within thirty days (or such longer reasonable time as specified in regulations of the Board for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application.
> (2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by –

10

> (A) providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or
> (B) giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained. Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request.

15 U.S.C. § 1691(d). As noted in our recitation of the pertinent facts, the four lenders to whom Sunrise Chevrolet forwarded Thele's application – that is, Auto One, Nuvell, Triad, and Bank One – sent Thele notice that they were denying her credit and either provided an explanation of their reasons or stated that Thele could request a statement of reasons that would be provided within 30 days of the request. *See* Def. Ex. G-J. Sunrise Chevrolet argues that it did not have to send proper notice to Thele in addition to the notices she received directly from the four potential lenders.[1]

We begin with the language of the statute. *Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 975 (7th Cir. 2004) (citation omitted). A subsection of the statute supports Sunrise Chevrolet's reading:

> Where a creditor has been requested by a third party to make a specific extension of credit directly or indirectly to an applicant, the notification and statement of reasons required by this subsection may be made directly by such creditor, or indirectly through the third party, provided in either case that the identity of the creditor is disclosed.

15 U.S.C. § 1691(d)(4). This provision suggests that when a third-party requests an extension of credit for an applicant, either the creditor or the third party – but not both – have to abide by

---

[1] Sunrise Chevrolet does not argue that it did not have to provide notice because it is not a creditor within the meaning of ECOA. *See generally Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 979 (7th Cir. 2004).

ECOA's notification requirements.

Dictum in the Seventh Circuit's decision in *Treadway v. Gateway Chevrolet Oldsmobile* supports this reading. In that case the court addressed "whether an automobile dealership's unilateral decision not to submit a credit application to any lender constitutes an 'adverse action' for purposes of the ECOA." *Treadway*, 362 F.3d at 975. In concluding that it does, the court said that under § 1691(d)(4), "if the dealer forwarded the credit application to a lender and that lender determined that the applicant was not creditworthy, *either* the lender *or* the dealer would have to provide notice to the applicant." *Id.* at 976 (emphasis added). *See also Brand v. Rohr-Ville Motors, Inc.*, 02 C 7103, 2003 WL 21078022, at *2 (N.D. Ill. May 9, 2003) (dismissing ECOA claim because "[t]he statute does not require Rohr-Ville to give the written notification; it requires either Rohr-Ville *or* Household [Automotive Finance] to give the written notification"); *Burns v. Elmhurst Auto Mall, Inc.*, 00 C 5732, 2001 WL 521840, at *2 (N.D. Ill. May 16, 2001) ("[I]f only one credit agency is used and the credit agency, not the automobile dealer, notifies the applicant in writing and states the reasons for the denial, the ECOA reporting requirement is met."). This reading of the statute is in keeping with the dual purposes of ECOA's notice requirement: "it discourages discrimination and it educates consumers as to the deficiencies in their credit status." *Treadway*, 362 F.3d at 977. Both purposes are met when the potential lender sends notice to the applicant, and an additional duplicative notice from a third party like Sunrise Chevrolet would add nothing of significance. Thus, Sunrise Chevrolet is entitled to summary judgment on the ECOA count if the four lenders complied with § 1691 by sending adequate notice to Thele.

Thele argues that summary judgment is not appropriate because a genuine issue of fact

exists as to whether the lenders sent her notice that they were denying her financing. It appears that there is no longer a dispute that Thele received notice from Auto One that it was denying her credit application. Although Thele stated at her deposition that she did not recall receiving a letter from Auto One, *see* Pl.'s Dep. at 78, she subsequently provided Sunrise Chevrolet with a letter addressed to her by Auto One dated February 13, 2003 explaining why it was denying her credit. Def.'s Facts ¶ 13; Def. Ex. J.

Sunrise Chevrolet argues it is entitled to a presumption that the letters from Nuvell, Triad and Bank One were delivered because it has come forth with evidence of proper mailing. *See Godfrey v. United States*, 997 F.2d 335, 338 (7th Cir. 1993) (citations omitted). "To invoke the presumption of delivery, the [party] could either present evidence of actual mailing such as an affidavit from the employee who mailed the [letter], or present proof of procedures followed in the regular course of operations which give rise to a strong inference that the [letter] was properly addressed and mailed." *Id.* (citations omitted). Sunrise Chevrolet has proceeded under the latter method of proof. It has provided affidavits from employees of Nuvell, Triad and Bank One attesting that normal procedures were followed in sending letters to Thele denying her credit. Def. Ex. G-I. Based on the affidavits provided, it is entitled to a presumption of delivery.

However, the presumption of delivery can be rebutted. And for purposes of summary judgment, "[w]hen a plaintiff unequivocally denies receipt of the letter, there is a genuine issue of a material fact." *Jones v. Citibank*, 844 F. Supp. 437, 442 (N.D. Ill. 1994) (citing *In re Longardner & Assocs.*, 855 F. 2d 455, 459 (7th Cir. 1988)). So, for example, in *Jones* the Court found that Citibank was not entitled to summary judgment on the basis that the statute of limitations had expired on one of the plaintiff's ECOA, Fair Housing Act and section 1981 and

13

1982 claims because the plaintiff's affidavit denying receipt of Citibank's declination of credit created a genuine issue of fact as to the appropriate date on which the statute of limitation began to run. Thele points to two passages in her deposition as creating a genuine issue of fact as to whether the lenders provided notice. *See* Pl.'s Resp. at 12. In the first, she states that almost two and a half weeks after she took possession of the Monte Carlo, "Sunrise Chevrolet called . . . to tell me that I didn't get approved, and that was only because Ms. Adams called them." Pl.'s Dep. at 50. This does not constitute a denial that she received notice from Nuvell, Triad or Bank One. The Court sees nothing in the second cited passage, in which Thele talks about GMAC picking up her Envoy from Sunrise, that can be interpreted as a denial that she received notice from the lenders. Pl.'s Dep. at 54. Thele has failed to provide any evidence that could rebut the presumption of delivery, and accordingly, Sunrise is entitled to summary judgment on Thele's ECOA claim.

### 5. *Count 6 – failure to comply with Fair Credit Reporting Act*

In Count 6, Thele claims that Sunrise Chevrolet violated the Fair Credit Reporting Act, 15 U.S.C. § 1681m, by failing to provide her notice that it had refused to grant her credit; failing to tell her that she had 60 days to request a free copy of her credit report; failing to inform her that she could dispute the accuracy of her credit report; and failing to provide the name, address and toll-free number of the credit reporting agency that provided the report relied upon by Defendant. Compl. ¶ 58. Sunrise Chevrolet argues it is entitled to summary judgment on the FCRA claim for the same reason it was entitled to summary judgment on the ECOA claim – that is, Sunrise Chevrolet did not have to provide redundant notification.

Only a person who has taken an "adverse action with respect to any consumer that is

14

based in whole or in part on any information contained in a consumer report" must comply with the Act's notification requirements. 15 U.S.C. § 1681m(a). But Sunrise Chevrolet does not argue that it did not have to provide notice because it did not engage in an adverse action. Defendant's omission of this argument is notable because the Seventh Circuit has stated that it doubts that a dealership has engaged in an adverse action when a lender denies financing to a car purchaser whose application was forwarded to the lender by the dealership. *Treadway*, 362 F.3d at 983 (citing *Najieb*, 2002 WL 31906466, at *6 n.14). In *Najieb* Judge Aspen had explained that a car dealership does not commit an adverse action by forwarding a consumer's credit application – including her credit report – to potential lenders. *Najieb*, 2002 WL 31906466, at *6 n.14. Absent evidence that the dealership "was further involved in any financial institution's decision to decline to extend credit" to the consumer, the consumer's FCRA claim must fail. *Id.* However, the Court cannot grant Sunrise Chevrolet's summary judgment motion on this basis because it has not raised the issue.

Before addressing the legal premise on which Sunrise Chevrolet's motion is based, the Court will address whether Defendant has met the two predicate factual findings on which its argument depends – that is, whether Nuvell, Triad, Bank One and Auto One sent notice to Thele that they were denying her credit and whether the letters complied with 15 U.S.C. § 1681m. We have already found that Thele has failed to raise a genuine issue as to the former; we now find the letters comply with the requirements of 15 U.S.C. § 1681m. FCRA requires any person who takes "any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report" to:

> (1) provide oral, written, or electronic notice of the adverse action to the

15

consumer;
> (2) provide to the consumer orally, in writing, or electronically –
>> (A) the name, address, and telephone number of the consumer reporting agency (including a toll-free telephone number established by the agency if the agency compiles and maintains files on consumers on a nationwide basis) that furnished the report to the person; and
>> (B) a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken; and
> (3) provide to the consumer an oral, written, or electronic notice of the consumer's right –
>> (A) to obtain, under section 1681j of this title, a free copy of a consumer report on the consumer from the consumer reporting agency referred to in paragraph (2), which notice shall include an indication of the 60-day period under that section for obtaining such a copy; and
>> (B) to dispute, under section 1681i of this title, with a consumer reporting agency the accuracy or completeness of any information in a consumer report furnished by the agency.

15 U.S.C. § 1681m(a). All four letters contained the four requisite items of information. *See* Def. Ex. G-J. Thus Sunrise Chevrolet's motion for summary judgment on Count 6 depends on whether as a matter of law, FCRA requires redundant notification.

The Court finds that just as redundant notification is not necessary to satisfy the dual purposes of the ECOA, it is not needed to effectuate the purpose of the FCRA notice requirement. We agree with Judge Anna Brown's interpretation of FCRA in *Razilov v. Nationwide Mutual Insurance Co.*, 242 F. Supp. 2d 977, 989-90 (D. Ore. 2003).

> As noted, the purpose of FCRA is to protect consumers from the transmission of inaccurate information about them. This purpose is accomplished by informing consumers that their credit history has been used and providing consumers with the information they need to determine whether the information contained in their accessed consumer reports is accurate or needs to be corrected. *See* § 1681m. A consumer does not need multiple notices from various "participants" about the same adverse action in order to receive the protection afforded by FCRA. To the contrary, multiple notices regarding the same transaction would be confusing and could suggest erroneously that more than one adverse action had been taken. In any event, the statute does not contain any language that indicates Congress

16

intended to require all persons or entities who participated in decisions that led to adverse action to give notice in order to achieve the purpose of the statute.

*Id.* at 989-90 (citation omitted). Accordingly, the Court grants Sunrise Chevrolet's motion as to Count 6.

## Conclusion

For the reasons stated, the Court grants Sunrise Chevrolet's motion for summary judgment in its entirety [docket # 17]. The Clerk is directed to enter judgment in favor of Defendant on all counts.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 28, 2004